<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STUART ARON, | : |
| Plaintiff, | : Civil Action No. 03-2581 (KSH) |
| v. | : |
| | : **OPINION** |
| QUEST DIAGNOSTICS INC., | : |
| Defendant. | : |

**KATHARINE S. HAYDEN, U.S.D.J.**

Stuart Aron has sued Quest Diagnostics over its company policy of requiring that its phlebotomists work a minimum of two Saturdays per month to provide coverage at patient service centers ("PSCs") that remain open on Saturdays. Aron is an Orthodox Jew, whose religious beliefs prevent him from working on the Sabbath. After a staffing company that places technical professionals arranged for Aron to be interviewed at Quest for a phlebotomist position in the Lakewood, New Jersey area, Quest learned that Aron could not work the mandated Saturday schedule and denied him the phlebotomist position. Aron filed a complaint with the EEOC charging religious discrimination on grounds that Quest told him he was not hired due to his inability to work on Saturdays. After a mediation in the EEOC, and an interview with Quest personnel that was granted as a result of the mediation, Quest did not offer him a job. The EEOC did not find violations of the statutes based on its investigation and issued a Right to Sue Letter, after which Aron timely filed in District Court, *pro se*. His lawsuit charges that Quest's

conduct is discriminatory on grounds that they did not hire him because they would not accommodate his not working on Saturdays.

Quest has filed a motion for summary judgment arguing that Aron has not presented any evidence of pretext "that remotely suggests" that it did not hire him because he is an Orthodox Jew, and that "the undisputed evidence establishes nothing more than that Plaintiff was subjected to Quest Diagnostics' policy mandating that phlebotomists be able to work Saturdays . . . ."
Defendant has a company policy that all phlebotomists must work a designated weekday schedule plus a minimum of two Saturdays per month.  For the reasons that follow, defendant's motion is granted.

I.   BACKGROUND

The following factual background is established by the record, consisting of plaintiff's deposition, affidavits of employees of Quest and GreyStone Staffing, and records from the latter entities.  Quest provides clinical testing, clinical information and clinical services in the healthcare industry.  (Walek Aff. ¶ 1.)  In June 2001, Quest contacted GreyStone Staffing of Central Jersey LLC ("Greystone"), a staffing agency, to condense a candidate pool for its consideration in filling an in-office phlebotomist position at Ocean City Medical Internal Associates Group, which is located in Lakewood, New Jersey.  (Walek Aff. ¶ 5.)  Anna Salerno ("Salerno"), Quest's Human Resources Generalist, informed Janice Brihn ("Brihn"), Greystone's then Staffing Recruiter, that the applicants needed to be available Monday-Friday 8:00 a.m. – 12:30 p.m., with one hour lunch, and then float between patient service centers from 1:30 p.m. – 4:30 p.m.  (Brihn Aff. ¶¶ 4, 8-10.)  Greystone was also informed that the applicants needed to

work a designated weekday schedule plus a minimum of two Saturdays per month at one of defendant's patient service centers. (Brihn Aff. ¶¶ 4, 8-10; Walek Aff. ¶ 6.)

Plaintiff contacted Greystone after seeing a newspaper advertisement. He cannot perform certain acts on the Sabbath, which is every Saturday, and on certain Jewish holidays (Aron Dep. at 29:11-13), and he informed GreyStone that he could not work on Saturdays due to religious concerns. (Aron Dep. at 78:19-79:3; 97:10-25.) However, Greystone still identified plaintiff as a potential candidate and faxed his resume to Salerno, who advised Brihn that she would like plaintiff to meet with management. (Brihn Aff. ¶ 12, 14.) On July 1, 2001, plaintiff met with Judi Hendricks ("Hendricks"), Quest's Training Specialist. (Brihn Aff. ¶ 14; Hendricks Aff. ¶¶ 1, 5.) Prior to the interview, plaintiff was unaware of the duties of the position, or whether the job was full or part-time. (Aron Dep. at 86:22-87:8.) During the interview, plaintiff first learned the position consisted of working two Saturdays per month. (Hendricks Aff. ¶ 10.) He informed Hendricks that he was an Orthodox-observant Jew and asked if it was possible not to work on Saturdays. Hendricks told him that she would find out. (Hendricks Aff. ¶¶ 11-12.) Hendricks contacted her supervisor, Barbara Walek ("Walek"), and asked whether plaintiff could be hired despite his inability to work on Saturdays. (Hendricks Aff. ¶ 11; Walek Aff. ¶ 8.) Walek in turn asked her supervisor Michael Todd Raymond ("Raymond), the Director of Branch Operations, who advised Walek that because plaintiff could not meet the two Saturdays per month requirement, he was not qualified for the position and could not be hired. (Walek Aff. ¶¶ 9-11; Raymond Aff. ¶¶ 3, 5.)

Raymond, who worked for Quest since 1991, had oversight for Quest's phlebotomy, logistics, and stat laboratories through the New York/New Jersey region and was responsible for

3

a workforce of 1,000 employees and supervised about 35 supervisors. (Raymond Aff. ¶ 2.) His affidavit states that Quest's policy mandating that phlebotomists work a minimum of two Saturdays per month began in 2000 in order to address the company's business needs "relating to the increase in the volume of services rendered, namely employee and client satisfaction." (Raymond Aff. ¶ 5.) Raymond states that he did consider, along with Walek, whether he could make an accommodation for Aron, but that he "concluded that Quest Diagnostics could not compromise employee and client satisfaction" in order to hire someone who could not comply with the policy. (Raymond Aff. ¶ 7.) Raymond indicated in the Affidavit that even though the policy has resulted in the loss of a number of otherwise qualified candidates who, due to a variety of reasons, were unable to meet the Saturday requirement, the company has consistently maintained it. (Raymond Aff. ¶ 11.) In May, 2001, Quest issued a Memorandum to all patient service centers reminding its employees to be sure they were all signing up for at least two Saturdays per month, thanking them for "working so hard on Saturdays." (Jefferson Decl., Exh. G.)

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact" such that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute will not defeat a summary judgment motion unless the dispute is both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). At the summary judgment stage, the Court's "function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the Court must construe the facts and all inferences that

reasonably could be drawn therefrom in a light most favorable to the non-moving party. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002).

**III.   DISCUSSION**[1]

The Third Circuit has recognized two theories of religious discrimination: "disparate treatment" and "failure to accommodate." Abramson v. William Patterson College, 260 F.3d 265, 281 (3d Cir. 2001). The Court will analyze the Complaint under both theories for the sake of completeness, recognizing that on its face, plaintiff's *pro se* complaint alleges failure to accommodate.

**Disparate Treatment**

In order for plaintiff to establish a claim of religious discrimination under a disparate treatment theory,[2] he must demonstrate that defendant had a discriminatory motive. Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003) (citing Teamsters v. United States, 431 U.S. 324, 335-36 (1977)). The Court's analysis is based upon the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which requires that plaintiff make a

---

[1] Defendant's memorandum of law in support of its motion for summary judgment was inadvertently omitted from the package sent to the Clerk's Office. Plaintiff received the memorandum on July 8, 2004 after defendant realized its omission. Plaintiff argues that since the Amended Scheduling Order indicated the motion filing date should be no later than July 2, 2004, defendant's motion for summary judgment should be denied. The Court disagrees. Defendant filed the motion by July 2, 2004 even though plaintiff was not in receipt of such papers on such date. In addition, plaintiff has not demonstrated that he was prejudiced in any way.

[2] Plaintiff cannot maintain a claim of disparate impact. To establish a disparate impact claim, a plaintiff must show that a particular employment practice creates a disparate impact on a protected group through statistical evidence. Wards Cove Packing Co., Inc. v. Antonio, 490 U.S. 307-08 (1989). Plaintiff has not produced any statistical evidence that defendant's two Saturdays per month requirement disproportionately impacts Orthodox-observant Jews.

*prima facie* showing by establishing: (1) he is a member of a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. Id. at 802; see also Abramson, 260 F.3d at 281-82. Once a *prima facie* case of discrimination is established, the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). (Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. Id.)

Once the employer satisfies its burden of articulating a legitimate, nondiscriminatory reason for its action, "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." Id. To defeat a defense motion for summary judgment after the employer satisfies its burden of production, "the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. at 764; see also Sheridan v. E.I. DuPont de Numours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996).

Defendant asserts that plaintiff has failed to establish a *prima facie* case. There is no dispute that plaintiff, who is an Orthodox-observant Jew, is a member of a protected class. But defendant maintains that "plaintiff did not 'apply' for the phlebotomist position at Quest Diagnostics, in the ordinary sense of the word, because he was referred to Quest Diagnostics by

6

GreyStone Healthcare." (Def. Moving Br. at 12.) This is not persuasive – regardless of how plaintiff received an interview for the phlebotomist position, plaintiff was not hired for the position after informing defendant that he could not work on Saturdays.

Defendant next argues that plaintiff was not qualified for the position. The basis for the argument is that plaintiff's inability to work on Saturdays made him not qualified for the phlebotomist's position. In opposition, plaintiff argues that "[a]bility to work on specific days does not qualify or disqualify an individual for a position or have any bearing on ability." (Pl. Oppos. Br. at 3.) Construing the factual record in favor of the nonmoving party, and recognizing that in this context one can make the argument that "qualified" is being improperly conflated into "available" or the other way around, the Court will find that plaintiff has established a *prima facie* case.

Defendant asserts a legitimate, nondiscriminatory reason for plaintiff's rejection, specifically that the decision not to hire him was based on plaintiff's inability to work two Saturdays per month as required by company policy. Through Raymond's affidavit, defendant explains that it established a two Saturdays per month work requirement in 2000 due to an increase in the services it rendered. Since making the change, defendant states that it has offered more satisfactory services to clients due to adequately staffed patient service centers (PSCs) on Saturdays. (Walek Aff. ¶ 11.) Defendant, which enjoys a "relatively light burden" of articulating a legitimate, nondiscriminatory reason for its action, Fuentes, 32 F.3d at 763, has met its burden of production and has established a legitimate non-discriminatory reason for not hiring plaintiff for the phlebotomist position.

Continuing the analysis, now plaintiff must show by a preponderance of the evidence that

defendant's explanation is pretextual. To satisfy this burden under the McDonnell Douglas paradigm, a plaintiff points to evidence from which a reasonable fact finder could either disbelieve defendant's reasons for not hiring him, or conclude that discrimination or retaliation was a motivating or determinative cause of defendant's decision. See Fuentes, 32 F.3d at 764.

  Here, plaintiff has adduced only his conclusory allegation that "there was intentional discrimination from upper management." (Pl. Oppos. Br. at 1.) This is insufficient. See Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (stating that a party resisting a summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial" and "cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions"). Plaintiff sets forth no evidence to rebut defendant's explanation that failure to meet the requirements of the company was the basis of its decision not to offer him a job. In Wechsler v. R D Mgmt. Corp., 861 F. Supp. 1153 (E.D.N.Y. 1994), the court held that the plaintiff's evidence that his interview was cut short when he revealed he was an Orthodox Jew, and that the employer would not provide reasons for not hiring him when he inquired over the phone, was insufficient to overcome the employer's evidence that the plaintiff was not suited for the position. Similarly, in the present matter, plaintiff has produced no evidence upon which a reasonable factfinder could base a decision to disbelieve defendant's proffered reason, nor has he adduced evidence of a discriminatory motive in the decision not to hire him or evidence that religious discrimination was a determinative factor in that decision.

  Affording plaintiff all reasonable inferences from the record, the Court concludes that plaintiff has not met his burden under the burden-shifting paradigm. Summary judgment is entered in favor of defendant on the issue of religious discrimination based on disparate

treatment.

**Failure to Accommodate**

Plaintiff maintains that even if defendant did not hire him on the basis of its Saturday work requirement, the company is required to make accommodations for him because his religion prevents him from working on Saturdays. Plaintiff frames the accommodations obligation thus: "[a]n employer is obligated to attempt to accommodate an employee's religious expression or conduct even if there would be legitimate grounds for discharge if there was no religious motivation for the conduct." (Pl. Oppos. Br. at 2.)

In 1972, the reasonable accommodation duty was incorporated into Title VII in the definition of religion. Section 701(j), 42 U. S. C. § 2000e(j), was added "to illuminate the meaning of religious discrimination under the statute," Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 63 n.1 (1986), and it states that "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or *prospective employee's* religious observance or practice without undue hardship on the conduct of the employer's business." 42 U. S. C. § 2000e(j) (emphasis added).[3]

As an initial matter, defendant points out that plaintiff was an applicant for a position and was not an existing employee when the alleged failure to accommodate arose. But the plain

---

[3] "The amendment was intended to clarify the scope of an EEOC guideline, C.F.R. § 1605.1 (1968), which required employers to make reasonable accommodations 'to the religious needs' of employees and prospective employees, short of undue hardship. As an example of a situation where undue hardship may exist, the guideline posited the case of an employee whose 'needed work cannot be performed by another employee of substantially similar qualifications during the period of absence of the Sabbath observer.'" Protos v. Volkswagen of America, Inc., 797 F.2d 129, 133 n.1 (3d Cir. 1986).

9

language of 42 U. S. C. § 2000e(j) makes clear that the failure to accommodate theory applies to prospective employees as well as existing employees.

To establish a *prima facie* case under the failure to accommodate theory, a plaintiff must show that: (1) "a sincere religious belief [] conflicts with a job requirement"; (2) the plaintiff "informed [his] employer of the conflict"; and (3) "[he] was disciplined for failing to comply with the conflicting requirement." Shelton v. Univ. of Medicine & Dentistry of New Jersey, 223 F.3d 220, 224 (3d Cir. 2000). On that showing, Shelton says that "the burden shifts to the employer to show that it made good faith efforts to accommodate, or that the requested accommodation would work an undue hardship." Id.[4] The Supreme Court has stated that undue hardship is any act that would require an employer to bear greater than a "*de minimis* cost" in accommodating an employee's religious beliefs. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977).

Plaintiff has established a *prima facie* case under the failure to accommodate theory: he cannot work on Saturdays due to his religious beliefs; he informed defendant of his inability to work on Saturdays during his interview; and he was not hired for the phlebotomist position. Since plaintiff was denied employment, and the outcome of the mediation-mandated interview was negative and not relevant to the issues here, this case does not involve good faith efforts to accommodate. Rather, defendant did not accommodate plaintiff's religious beliefs and must demonstrate that its failure to do so is justified on the basis of undue hardship.

Defendant argues undue hardship because accommodating plaintiff by absolving him

---

[4] The Shelton decision acknowledges that "the Supreme Court has declined to accept or reject any particular prima facie case or burden-shifting approach to Title VII religious accommodation cases." Shelton, 223 F.3d at 220, 225 (citing Ansonia, 479 U.S. at 67).

from Saturday work would cause "(i) an increase in the number of Saturdays that existing employees are required to work, which has the potential to negatively affect both their performance and morale, as well as the health of its patients; (ii) a decrease in services rendered by the PSCs and/or the lack of adequately staffed PSCs, which also has potential to negatively affect the health of patients; and (iii) the hiring of additional phlebotomists to provide Saturday coverage, who would need also to undergo training at the time and expense of the Company." (Raymond Aff. ¶ 8; Def. Moving Br. at 14.)

There is record support for defendant's undue hardship claim. The record indicates that in April 2001, defendant had a "town meeting" where management and employees discussed defendant's policies together, including that phlebotomists working at the patient service centers as well as in-office phlebotomists must adhere to the Saturday work requirement. (Raymond Aff. ¶ 9.) Raymond states that the company emphasized the importance of the Saturday commitment. (Raymon Aff. ¶ 9.) Shortly after the town meeting, a Memorandum dated May 2, 2001 was sent to defendant's employees that memorialized the policy and reiterated that in order to meet the company's needs, employees would need to sign up for at least two Saturdays per month as it was going to be "difficult to get coverage." (Jefferson Decl., Exh. G; Raymond Aff. ¶ 10.) The Memorandum demonstrates that the company acknowledged the difficulties inherent in the Saturday obligation, particularly over the summertime. Defendant's evidence indicates that Saturday hours are a global requirement on Quest phlebotomists as a group, and that defendant has enforced its policy of requiring employees to work on Saturdays. Indeed, the practical "hardship" demonstrated in this record falls on the employees – *all* of them. Raymond attests that the company has lost otherwise qualified employees because they could not meet the

11

Saturday requirement. (Raymond Aff. ¶ 11.)

In the collision between plaintiff's unavailability for Saturday work because of his religious convictions and defendant's consistent mandate that its employees work two Saturdays per month, the analysis of the Supreme Court in the seminal case of TWA v. Hardison, 432 U.S. 63, 81 (1977), is instructive.

Hardison involved the issue of whether TWA had satisfied its duty to accommodate the religious beliefs of an employee who could not work on Saturdays and who did not have sufficient seniority to bid for work assignments that would permit him regularly to observe Saturday as his Sabbath. Id. at 67-68. The district court found that the union's duty to accommodate did not require it to ignore the seniority system and that TWA had satisfied its reasonable accommodations obligations, but the Eight Circuit reversed the judgment for TWA on the basis that it had not satisfied its duty to accommodate under EEOC guidelines because it had rejected three reasonable alternatives. Id. at 69-70. The Supreme Court reversed the circuit decision on grounds that the seniority system represented an accommodation of both the religious and secular needs of all TWA's employees; and that the employer was not required to entertain a variance over the objections of employees senior to Hardison, thereby violating the CBA and depriving certain employees of their contractual rights. Id. at 81. "It would be anomalous to conclude that by 'reasonable accommodation' Congress meant that an employer must deny the shift and job preference of some employees . . . in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far." Id. Hardison held further that "to require [defendant] to bear additional costs when no such costs are incurred to give other employees the days off that they want would

12

involve unequal treatment of employees on the basis of their religion.  By suggesting that [defendant] should incur certain costs in order to give [plaintiff] Saturdays off . . . would in effect require [defendant] to finance an additional Saturday off and then to choose the employee who will enjoy it on the basis of his religious beliefs. While incurring extra costs to secure a replacement for [plaintiff] might remove the necessity of compelling another employee to work involuntarily in [plaintiff's] place, it would not change the fact that the privilege of having Saturdays off would be allocated according to religious beliefs." Id. at 84-85.

      The Court concludes from Hardison's analysis and from the fact of defendant's consistent enforcement of Saturday work hours, that there is ample support for defendant's position that creating a variance for plaintiff's benefit would create an undue hardship by negatively affecting employee morale and patient service.

      In his opposition papers, plaintiff makes three arguments in response to defendant's undue burden claim.  First, plaintiff claims that most of the doctors who work at Ocean County Internal Medicine Associates, the location he interviewed for, are Orthodox Jews and do not work on Saturdays.  And "[t]he position was tied in to another position at one of Quest's service centers, presumably the Toms River location" so "[w]hat possible hardship would there be not to connect the two?"  (Pl. Oppos. Br. at 3.)  In support of this proposition, plaintiff attached to his opposition papers as Exhibit B, a one-page document that lists the doctors employed at Ocean County Internal Medicine Associates and indicates that the hours of operation are Monday through Friday, with no Saturday hours.[5]

---

[5] The Court assumes this undated flyer contains information relevant to the time period in question.

Facially, Exhibit B gives some factual support to plaintiff's claim that "Most, if not all, of the doctors there are orthodox Jews and do[] not have Saturday hours. . . . The position was tied in to another position at one of Quest's service centers, presumably the Toms River location. . . . What possible hardship would there be to connect the two?" (Pl. Oppos. Br. at 3.) But a closer look reveals that what plaintiff is doing is asking a question and surmising, and moreover, Exhibit B does not refute what defendant is very specific about – that all employees must work a minimum of two Saturdays per month at patient service centers. (Walek Aff. ¶¶ 10-11; Raymond Aff. ¶ 5.) There is no reason to infer that just because plaintiff interviewed for a position as an in-office phlebotomist at a doctor's office with no Saturday hours, he would not be required to work at another service center on Saturdays. See Brihn Aff. ¶ 10 (discussing defendant's policy of "floating" phlebotomists among patient service centers). And again, plaintiff only surmises that a concentration of Orthodox Jews in the region where he was seeking employment might support a variance that he would benefit from.

The May, 2001 Memorandum to all employees that defendant has produced indicates that the Saturday requirement is global. The town meeting that Raymond refers to, and the May, 2001 Memorandum demonstrate that a variance would work a hardship akin to what Hardison speaks to: plaintiff would not be required to work on Saturdays, employees who do not have his religious beliefs would be subjected to Saturday hours, and they would experience discrimination on those grounds. Hardison, 432 U.S. at 84-85.

Plaintiff's second argument is in response to defendant's assertion that breaking company policy would decrease services rendered and negatively affect patient satisfaction. Plaintiff argues that "[a]n employer cannot claim that employee morale, as a result of the

14

accommodation, is itself undue hardship," and defendant's argument is "hypothetical" and "[h]ypothetical and conceivable hardships are not enough to prove that the hardship is more than *de minimis*." Regarding the claim that employee morale cannot be a basis for undue hardship, the foregoing analysis of Hardison establishes that the effect on other employees of an accommodation is a practical consideration in determining reasonableness. On that basis, this Court rejects plaintiff's position, noting that he offers no support for it.

For the proposition that defendant's arguments are merely "hypothetical," plaintiff relies on Tooley v. Martin-Marietta Corp., 648 F.2d 1239, 1243 (9th Cir. 1981), which held that a claim of undue hardship "cannot be supported by merely conceivable or hypothetical hardships; instead, it must be supported by proof of 'actual imposition on co-workers or disruption of the work routine' . . . . The magnitude as well as the fact of hardship must be determined by the examination of the facts of each case."

Plaintiff's reliance on Tooley does not defeat defendant's argument. Tooley involved the Steelworkers' refusal to accept a "substituted charity" contribution in lieu of union dues offered by certain employees whose Seventh Day Adventist beliefs prevented them from joining the union. Under the "union shop" clause in the CBA, the Steelworkers wanted these employees to be discharged. The district court found that implementing the "substituted charity" accommodation would not be an undue hardship for the union, and enjoined the union and the company from attempting to discharge the plaintiffs for failing to pay union dues so long as they made equivalent contributions to a mutually acceptable charity. The Ninth Circuit examined the union's claims of unreasonableness and undue hardship, and rejected them on a finding that the

accommodation struck an acceptable balance between the employees and the union.  The former could practice in accord with their religious convictions and the union could enjoy the benefits of the union shop agreement.  Id. at 1242.  The court found the union would not suffer an untoward economic hardship, concluding on the basis of the Steelworkers' surplus reserves over the prior three years that any likelihood of an economic impact of accommodating as many as six employees was remote.  Id. at 1243.  Applying Tooley here, it appears that defendant has offered reasons for not breaking its policy based on actual, not hypothetical imposition on co-workers or disruption of the work routine which has led defendant to maintaining the policy consistently, even in the face of losing employees.

Plaintiff's last argument rejects defendant's claim that it would incur training costs if it hired phlebotomists to fill the Saturday slots.  Plaintiff claims that such additional workers would already be phlebotomists, and assumes that the training costs would be *de minimis*.  Plaintiff relies on United States EEOC v. IBP, Inc., 824 F. Supp. 147 (C.D. Ill. 1993) for the proposition that "infrequent payments and administrative costs of implementing the accommodation are *de minimis*."  (Pl. Oppos. Br. at 3-4.)

Aside from the fact plaintiff offers no evidence to suggest that defendant's claims about associated costs are false, his reliance on United States EEOC v. IBP is not persuasive.  In that case, the district court never found whether an undue hardship existed.  The facts showed that an existing employee who worked on scheduled Saturdays became a Seventh Day Adventist and refused to work on Saturdays.  He was terminated, and then began working at another job on Saturdays.  The issue before the court was whether the plaintiff was sincere in his religious

beliefs and whether his employer had attempted to reasonably accommodate him. Here, no one is disputing plaintiff's sincerity regarding his religious beliefs. Also, defendant is not claiming it tried to accommodate plaintiff; rather, defendant is arguing that hiring plaintiff would have caused an undue hardship.

The Court finds that plaintiff has not provided persuasive authority that would undermine defendant's undue hardship claim as framed in its papers. Nothing in the record contradicts defendant's claim that staffing patient treatment centers with phlebotomists on Saturdays supports Quest's expanded services and has resulted in increased client satisfaction. Defendant was explicit in why it decided not to accommodate plaintiff: it concluded that it "could not compromise employee and client satisfaction . . . in order to hire any individual who could not comply with the company's two Saturdays per month requirement." (Raymond Aff. ¶ 7.)

Plaintiff's opposition papers offer arguments – that defendant is merely "hypothesizing"; that one site in the area he was applying was staffed by personnel who were also Orthodox Jews, so it would not be open on Saturdays; that employee morale cannot be an undue hardship; and that infrequent administrative costs are *de minimis*. But these are arguments, and facially they are not persuasive. The record contains evidence that goes beyond hypothesis; employee morale is demonstrably a factor in defendant's decision not to vary; and there is nothing to show that defendant's claims about its costs are false or overstated.

Plaintiff's arguments in opposition to this summary judgment motion simply do not amount to significant probative evidence that puts at issue defendant's well-supported undue hardship assertions. As such, no genuine dispute of material fact appears in the record, and

defendant is entitled to summary judgment on the issue of failure to accommodate.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment.

Dated: June 30, 2005                                                                 s/ Katharine S. Hayden

                                                                                     Katharine S. Hayden, U.S.D.J.